# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THE PARISH OF PLAQUEMINES** | * | **CIVIL ACTION** |
| **versus** | * | **NO.** |
| **GREAT SOUTHERN OIL & GAS** | * | **SECTION " "** |
| **COMPANY, INC., CONOCOPHILLIPS** | | |
| **COMPANY, EXXON MOBIL** | * | **MAGISTRATE** |
| **CORPORATION, FREEPORT** | | |
| **SULPHUR COMPANY, CHEVRON** | * | |
| **U.S.A. INC., LINDER OIL COMPANY,** | | |
| **A PARTNERSHIP, STONE ENERGY** | * | |
| **CORPORATION, CHEVRON U.S.A.** | | |
| **HOLDINGS INC., PCS PHOSPHATE** | * | |
| **COMPANY, INC., THE STONE** | | |
| **PETROLEUM CORPORATION, AND** | * | |
| **CHEVRON PIPE LINE COMPANY** | | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>NOTICE OF REMOVAL</u>

**NOW INTO COURT,** through undersigned counsel, come Defendants, Exxon Mobil Corporation, ConocoPhillips Company, Chevron U.S.A., Inc., Chevron U.S.A. Holdings, Inc., and Chevron Pipe Line Company (the "Removing Defendants"), and with a full reservation of rights, defenses, objections, and exceptions, hereby remove to this Court the civil action in the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana, entitled *The Parish of Plaquemines v. Great Southern Oil & Gas Company, Inc., ConocoPhillips Company, Exxon Mobil Corporation, Freeport Sulphur Company, Chevron U.S.A. Inc., Linder Oil Company, A Partnership, Stone Energy Corporation, Chevron U.S.A. Holdings Inc., PCS Phosphate Company, Inc., The Stone Petroleum Corporation, and Chevron Pipe Line Company*, Civil Action No. 60-998, Division "B" (the "Petition").

**INTRODUCTION AND OVERVIEW OF GROUNDS FOR REMOVAL**

1.      This Court is a proper venue because the Parish of Plaquemines (the "Plaintiff") filed the Petition in the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana, and the United States District Court for the Eastern District of Louisiana is the district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).

2.      Pursuant to 28 U.S.C. § 1446(a), the Removing Defendants attach hereto as Exhibit "A" *in globo* a copy of all process, pleadings, and orders served upon them in this action as well as a copy of all process, pleadings, and orders available in the state court record.

3.      Exxon Mobil Corporation, ConocoPhillips Company, Chevron U.S.A., Inc., and Chevron Pipe Line Company were all served with a copy of the Petition on November 22, 2013. Chevron U.S.A. Holdings, Inc. was served with a copy of the Petition on November 25, 2013. Accordingly, this Notice of Removal is being filed within thirty days after the receipt by the Removing Defendants, through service or otherwise, of a copy of the Petition and is therefore timely filed in accordance with 28 U.S.C. § 1446(b).

4.      All Defendants that have been named in this action and served at the time of the filing of this Notice of Removal have consented, in writing, to removal of the action.  Those consents are attached hereto as Exhibit "B" *in globo*.

5.      Pursuant to 28 U.S.C. § 1446(d), undersigned counsel certifies that, promptly after the filing of this Notice of Removal, copies of the Notice will be served on opposing counsel and filed with the Clerk of Court of the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana, as provided by law, to effect the removal of the state court action.

6.      This case is removable because:

a.     Diversity jurisdiction under 28 U.S.C. § 1332 exists as between the Plaintiff and the diverse Defendants identified below because the Plaintiff has improperly joined the non-diverse Defendants in this matter in an attempt to defeat diversity jurisdiction;

b.     The Petition asserts general maritime claims; and

c.     Though labeled as a suit by the Plaintiff, this case is in substance a "mass action" under the Class Action Fairness Act ("CAFA"). The Petition seeks damages, restoration and remediation costs relative to land owned not by the Plaintiff, but rather by individual landowners in Plaquemines Parish ("the landowners").  As there are more than 100 such landowners who are real parties in interest, this case is properly removed as a "mass action" under CAFA.

d.     The Natural Gas Act, 15 U.S.C. §§ 717-717w applies to Plaintiff's claims.

## GROUNDS FOR REMOVAL

**I.     Removal of this Action is Proper Because this Court has Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1332 (Diversity Jurisdiction).**

7.     This suit is a civil action over which this Court has original subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1332 (diversity jurisdiction), and is one which may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441, in that it is a civil action wherein the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states as to the diverse Defendants identified below.  Although Plaintiff has named some non-diverse Defendants, as explained below, the claims against them cannot be considered for purposes of determining diversity jurisdiction because they have been improperly joined with the claims against the diverse Defendants.  This follows from the fact that Plaintiff attempts to bring in one suit enforcement

actions against different Defendants, on different permits, corresponding to different activities, at different locations, at different times.  As a result, the claims against the various Defendants have no real connection to each other and, moreover, the various Defendants cannot be – and indeed, are not even alleged to be – jointly and severally liable.[1]

### A.    Complete Diversity of Citizenship

### 1.    Plaintiff

8.      The Plaintiff, the Parish of Plaquemines, is a citizen of Louisiana.

9.      To the extent the Plaintiff purports to name the State of Louisiana as an additional party plaintiff, such attempt is improper, as the State and Local Coastal Resources Management Act of 1978, and more specifically La. R.S. 49:214.36(D), does not provide the Plaintiff with the authority to bring an action in the name of the State of Louisiana.  *See, e.g.*, *Gastel v. McGenty*, 20 La. Ann. 431, 432 (La. 1868) (holding that the Levee Commissioners could not intervene in a suit in the name of the State because "[t]he act of the Legislature confirming and ratifying the Levee Commissioners . . . and continuing them in their functions . . . did not give them authority to sue for the State.   There is no act giving them such authority, and they cannot, by intervening in a suit, make the State a party thereto."); *State v. Gulfport Energy Corp.*, 12-356 (La. App. 3 Cir. 11/7/12), 2012 La. App. LEXIS 1384, at *6-10 (finding that the Louisiana Department of Wildlife and Fisheries had neither express nor implied statutory authority to bring the action on behalf of the State).

---

[1]      As evidenced by the consents attached hereto, each non-removing diverse Defendant from whom consent has been obtained agrees that for the reasons set forth herein, the claims at issue in this lawsuit were improperly joined, and each Defendant – diverse or non-diverse – should have been sued separately.  To avoid an abundance of duplicative filings, and for the convenience of the Court, those non-removing diverse Defendants have consented to the instant Notice of Removal as opposed to filing individual notices on this ground.

10.     Alternatively, even assuming that the Plaintiff has the right to bring this action in the name of the State as an additional party (which the Removing Defendants deny), upon information and belief, the private counsel purporting to represent the State have not been appointed to do so by the attorney general with the concurrence of the commissioner of administration in accordance with the mandatory procedure set forth in La. R.S. 49:258.[2]

11.     Accordingly, at the time of the filing of this Notice of Removal, the State of Louisiana is not a proper plaintiff in this lawsuit.

### 2.     Defendants:

#### a.     Diverse Defendants

12.     Defendant ConocoPhillips Company, now, and was at the time of the filing of the Petition, incorporated in the state of Delaware with its principal place of business in Texas.

---

[2]     La. R.S. 49:258 provides in pertinent part:

Notwithstanding the provisions of any other law to the contrary and specifically the provisions of any law that authorizes the state or a state agency to appoint, employ, or contract for private legal counsel to represent the state or a state agency, including but not limited to the provisions of R.S. 42:261, 262, and 263, and R.S. 40:1299.39(E), ***any appointment of private legal counsel to represent the state or a state agency shall be made by the attorney general with the concurrence of the commissioner of administration in accordance with the following procedure:***

(1)  All attorneys appointed as private legal counsel to represent the state or a state agency shall meet or exceed written minimum qualifications and all appointments shall be made in accordance with a written appointments procedure, both of which shall be established by the attorney general and the governor, or their designees.  The commissioner of administration shall participate in the preparation of the minimum qualifications and the appointment procedure.  The minimum qualifications and the appointments procedure shall be published at least annually in the Louisiana Bar Journal or such other publication as will reasonably assure dissemination to the membership of the Louisiana State Bar Association.  The exercise of the authority provided in this Section shall not be subject to the Administrative Procedure Act.

(2)  All appointments of private legal counsel representing the state or a state agency that are in effect on the effective date of this Section shall be reviewed to ensure that such counsel satisfy the minimum qualifications provided for in Paragraph (1) of this Section and all such changes in or terminations of such appointments shall be made as are necessary to ensure such compliance.

(emphasis added).

Therefore, for purposes of diversity jurisdiction, Defendant, ConocoPhillips Company, is and was a citizen of Delaware and Texas.

13. Defendant Exxon Mobil Corporation, now, and was at the time of the filing of the Petition, incorporated in the state of New Jersey with its principal place of business in Texas. Therefore, for purposes of diversity jurisdiction, Defendant, Exxon Mobil Corporation, is and was a citizen of New Jersey and Texas.

14. Defendant Chevron U.S.A. Inc., now, and was at the time of the filing of the Petition, incorporated in the state of Pennsylvania with its principal place of business in California. Therefore, for purposes of diversity jurisdiction, Defendant, Chevron U.S.A. Inc., is and was a citizen of Pennsylvania and California.

15. Defendant Chevron U.S.A. Holdings Inc., now, and was at the time of the filing of the Petition, incorporated in the state of Delaware with its principal place of business in California. Therefore, for purposes of diversity jurisdiction, Defendant, Chevron U.S.A. Holdings Inc., is and was a citizen of Delaware and California.

16. Defendant PCS Phosphate Company, Inc., upon information and belief, now, and was at the time of the filing of the Petition, incorporated in the state of Delaware with its principal place of business in Illinois. Therefore, for purposes of diversity jurisdiction and upon information and belief, Defendant, PCS Phosphate Company, Inc., is and was a citizen of Delaware and Illinois.

17. Defendant Chevron Pipe Line Company, now, and was at the time of the filing of the Petition, incorporated in the state of Delaware with its principal place of business in California. Therefore, for purposes of diversity jurisdiction, Defendant, Chevron Pipe Line Company, is and was a citizen of Delaware and California.

#### b.        Non-diverse Defendants

18.        Defendant Great Southern Oil & Gas Company, Inc., upon information and belief, now, and was at the time of the filing of the Petition, incorporated in the state of Louisiana with its principal place of business in Florida.  Therefore, for purposes of diversity jurisdiction and upon information and belief, Defendant, Great Southern Oil & Gas Company, Inc., is and was a citizen of Louisiana and Florida.

19.        Defendant Freeport Sulphur Company, now, and was at the time of the filing of the Petition, a Delaware corporation with its principal place of business in New Orleans, Louisiana.  Therefore, Defendant Freeport Sulphur Company is and was a citizen of Delaware and Louisiana.  As represented in the Consent to Removal submitted by Freeport Sulphur Company and Mosaic Global Holdings, Inc., Freeport Sulphur Company has been improperly named, and Mosaic Global Holdings, Inc. is the proper entity to respond to Plaintiff's claims.  As further represented, Mosaic Global Holdings, Inc. is and was at the time of the filing of the Petition a Delaware corporation with its principal place of business in Minnesota.

20.        Defendant Linder Oil Company, A Partnership, upon information and belief, now, and was at the time of the filing of the Petition, a Louisiana partnership.  Upon information and belief, two of Linder Oil Company's partners, Louisiana General Oil Company and Linder Energy Company, are incorporated in the state of Louisiana with their principal places of business in Louisiana.  Therefore, for purposes of diversity jurisdiction and upon information and belief, Defendant, Linder Oil Company, A Partnership, is and was a citizen of Louisiana.

21.        Defendant Stone Energy Corporation, now, and was at the time of the filing of the Petition, incorporated in the state of Delaware with its principal place of business in Lafayette,

Louisiana. Therefore, for purposes of diversity jurisdiction and upon information and belief, Defendant, Stone Energy Corporation, is and was a citizen of Louisiana and Delaware.

22.     Defendant The Stone Petroleum Corporation, upon information and belief, is no longer in existence.  Prior to its cessation, however, The Stone Petroleum Corporation was incorporated in the state of Delaware with its principal place of business in Louisiana. Therefore, for purposes of diversity jurisdiction and upon information and belief, Defendant, The Stone Petroleum Corporation was a citizen of Delaware and Louisiana.

23.     Plaintiff commenced this action against eleven separate oil and gas exploration and production companies, alleging that their operations and activities were conducted in violation of the State and Local Coastal Resources Management Act of 1978, as amended, and the applicable regulations, rules, orders and ordinances promulgated or adopted thereunder by the State or Plaquemines Parish (the "CZM laws").  Petition, ¶ 3.  Plaintiff purports to expressly limit its claims in this lawsuit to the enforcement of the CZM laws, pursuant to La. R.S. 49:214.36(D), which Plaintiff alleges provides it the authority to bring "such injunctive, declaratory, or other actions as are necessary to ensure that no uses are made of the coastal zone for which a coastal use permit has not been issued when required or which are not in accordance with the terms and conditions of a coastal use permit."  Petition, ¶¶ 10, 33.  Further, Plaintiff expressly alleges that it makes no claims under Louisiana tort law, contract law, mineral law, or property law, among other restrictions.  Petition, ¶ 33(t).  Accordingly, Plaintiff's lawsuit was designed by Plaintiff to be strictly a permit enforcement action brought against eleven separate

entities, which engaged in distinct activities, at various times, under (or allegedly in the absence of) individually held permits.[3]

24.     Notably, Plaintiff's institution of this lawsuit is premature in contravention of the very CZM laws and regulations Plaintiff purports to enforce.  The Plaquemines Parish Coastal Zone Management Program explicitly requires that, if Plaintiff believes a permit violation has occurred, it must take administrative action before bringing suit.  *See* 2013 Coastal Zone Management Program Update to the Plaquemines Parish Coastal Zone Management Program at § 1-32 ("Any person, department, agency, or corporation may report violations to the CZM Administrator. The first step taken by the CZM Administrator after notification is to contact the permittee and attempt to alleviate the problem. If the permittee is uncooperative and/or the violation is of a serious nature, the CZM Administrator must take the matter to the Committee and/or Plaquemines Parish Council. If the violation is not resolved at this stage, the violator can be prosecuted."); *see also* Plaquemines Parish Coastal Zone Management Program, at § 7-8 (same).[4]  This administrative proceeding, bypassed by Plaintiff, does not allow for multiple permit violations to be joined together, let alone for multiple permit violations against multiple defendants to be joined together.

## B.     Improper Joinder

25.     The misjoinder theory that makes removal based on diversity jurisdiction appropriate in this matter was established in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353

---

[3]     A list of the coastal use permits issued for work in the area at issue is attached to the Petition as Exhibit D.  The Exhibit identifies 161 permits.

[4]     Plaintiff relies on La. R.S. 49:214.36 as its supposed authorization to bring suit against Defendants, but cites this provision in a vacuum.  Enforcement actions under § 241.36 are premature until administrative proceedings have been completed. *See* LAC 43:I.723.D(4) ("***If*** the permittee fails to comply with a cease and desist order or the suspension or revocation of a permit, the permitting body shall seek appropriate civil and criminal relief as provided by § 214.36 of the [State and Local Coastal Resources Management Act].") (emphasis added).

(11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000), wherein the Eleventh Circuit recognized that improper joinder may have occurred where a diverse defendant is joined with a non-diverse defendant with whom it does not have joint, several, or alternative liability, and the claims have no real connection to each other. Under *Tapscott*, egregious misjoinder of actions with no real connection to each other constitutes improper joinder under federal law.  77 F.3d at 1360.  The Fifth Circuit has recognized the *Tapscott* rule of improper joinder, and this District has applied it often, finding removal proper where a plaintiff joins unrelated claims that include non-diverse defendants in order to defeat removal, severing the claims from one another, and remanding the claims brought against the non-diverse defendants.  *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006); *In re Benjamin Moore & Co.*, 309 F.3d 296 (5th Cir. 2002); *Global Oil Tools, Inc. v. Barnhill*, 2013 U.S. Dist. LEXIS 84697, at *14 (E.D. La. June 17, 2013); *Davis v. Cassidy*, 2011 U.S. Dist. LEXIS 143090, at *6-7 (E.D. La. Dec. 13, 2011); *Accardo v. Lafayette Ins. Co.*, 2007 U.S. Dist. LEXIS 6859, at *7-9 (E.D. La. Jan. 30, 2007).

26.     Improper joinder under *Tapscott* requires a two-step analysis: (1) a determination as to whether there has been "procedural" misjoinder pursuant to the relevant state or federal joinder law, and (2) a determination as to whether the misjoinder was egregious.  *See, e.g. Texas Instruments Inc. v. Citigroup Global Markets, Inc.*, 266 F.R.D. 143, 147-48 (N.D. Tex. 2010). To determine whether joinder is improper under *Tapscott*, recent cases from this District have applied state law, "as it is the procedural law that governed the parties[ ] at the time that the suit

was originally filed." *Global Oil Tools, Inc.*, 2013 U.S. Dist LEXIS 84697, at *15 (citing *Davis*, 2011 U.S. Dist. LEXIS 143090, at *3-4; *Accardo*, 2007 U.S. Dist. LEXIS 6859, at *4-5).[5]

27. Here, the governing state law on improper joinder is Article 463 of the Louisiana Code of Civil Procedure, which provides:

> Two or more parties may be in the same suit, either as plaintiffs or as defendants, if:
>
> (1)    There is a community of interest between the parties joined;
>
> (2)    Each of the actions cumulated is within the jurisdiction of the court and is brought in the proper venue; and
>
> (3)    All of the actions cumulated are mutually consistent and employ the same form of procedure.[6]

A "community of interest" is found where the cumulated causes of action arise out of the same facts or present the same factual or legal issues. *Global Oil Tools, Inc.*, 2013 U.S. Dist LEXIS 84697, at *16 (citing *Stevens v. Bd. of Trustees of Police Pension Fund of City of Shreveport*, 309 So. 2d 144, 147 (La. 1975)). A community of interest exists only where enough factual overlap is present between the different actions or parties "to make it commonsensical to litigate them together." *Id.* (quoting *Mauberret-Lavie v. Lavie*, 2003-0099 (La. App. 4 Cir. 6/11/03), 850 So. 2d 1, 2). Moreover, for a true community of interest to exist, there must be shared or common liability respecting the subject matter at issue. *Global Oil Tools, Inc.*, 2013

---

[5]    Moreover, even if one were to apply the federal rules on joinder, the result would be the same. *See Defourneaux v. Metro. Prop. & Cas. Ins. Co.*, 2006 U.S. Dist. LEXIS 61550, at *2 n.2 (E.D.La. Aug. 30, 2006) (noting that "because the standards for joinder presented in Rule 20 of the Federal Rules of Civil Procedure and Article 463 of the Louisiana Code of Civil Procedure are very similar, there is not a material difference in the Court's application of these rules.").

[6]    Under Rule 20(a) of the Federal Rules of Civil Procedure, "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

-11-

U.S. Dist LEXIS 84697, at *17-18, 20 (noting that "the common thread in all three of the aforementioned cases [applying the improper joinder theory] is the court's recognition that the potential liability of one defendant was wholly independent of the other" and finding that the improperly joined claims at issue "will stand or fail on an independent determination of liability"); *Copellar v. Britt*, 188 So. 403, 405-06 (La. Ct. App. 2d Cir. 1939) (finding that defendants were improperly cumulated where they had no privity of contract, joint liability, or mutuality of interest).

28.     In this case, Plaintiff attempts to bring individual permit enforcement actions in one combined lawsuit against eleven separate Defendants.  Critically, the Petition contains no allegations that the Defendants are jointly, severally, alternatively, or solidarily liable for the alleged permit violations, or that any of the Defendants was engaged in a conspiracy to violate the CZM laws or any identified permit(s).  As the *Tapscott* court held, where the claims alleged do not involve any joint liability or conspiracy, joinder is improper.  *Tapscott*, 77 F.3d at 1359-60.

29.     Indeed, the potential liability of each Defendant for its alleged violation of the CZM laws and its individually held permit(s) has no relation to the potential liability of any other Defendant, and no Defendant is subject to any liability for the claims asserted against any other Defendant.  As such, the "potential liability of one defendant [is] wholly independent of the other" and the claims "will stand or fail on an independent determination of liability," thus making it clear that they are improperly joined.  *Global Oil Tools, Inc.*, 2013 U.S. Dist LEXIS 84697, at *17-18, 20.

30.     Further, there is insufficient factual and evidentiary overlap "to make it commonsensical" to litigate the claims against all of the Defendants together.  There are 161

permits identified in Exhibit D, which were issued to individual entities, over the course of over three decades, for a wide range of unrelated activities covering independent geographic areas. The claims asserted in this single lawsuit are so factually disconnected that the misjoinder here was clearly egregious. "When courts in th[e Eastern] district have considered egregiousness under Louisiana law, the focus has centered on the connection between the parties and the claims." *Davis*, 2011 U.S. Dist. LEXIS 143090, at *17; *see also Accardo*, 2007 U.S. Dist. LEXIS 6859, at *17-20 (E.D. La. 2007) (finding egregious misjoinder when the only factual overlap among the actions was that the properties at issue were damaged by the same hurricanes).

31. Additionally, the proof necessary to establish each Defendant's purported violations will be completely different. For example, the permits themselves contain distinct guidelines and obligations, the Defendants will be subject to different regulatory standards based on the time period in which they operated, and the methods and activities of the Defendants will differ greatly depending on the time period in which they operated. As the cumulated actions do not arise out of the same facts or present the same factual or legal issues, there is simply no "community of interest between the parties joined."

32. This lawsuit is essentially eleven separate permit enforcement actions, each with its own particular facts and legal issues. And "[t]he rule in Louisiana and elsewhere is that a plaintiff cannot in the same suit join different defendants 'in separate causes of action.'" *Copellar v. Britt*, 188 So. at 406 (quoting *Dubuisson v. Long*, 143 So. 2d 494, 496 (La. 1932)). The Plaintiff's improper joinder of eleven wholly separate and independent actions with no real connection to one another constitutes egregious misjoinder under *Tapscott* such that removal of this action is proper. *Global Oil Tools, Inc.*, 2013 U.S. Dist LEXIS 84697, at *20.

33.     Defendants who are improperly joined need not consent to removal.  *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).

34.     As set forth herein, the claims at issue are improperly joined under *Tapscott* for purposes of removal.  Accordingly, the claims against each Defendant should be severed, and diversity jurisdiction under 28 U.S.C. § 1332 exists as between the Plaintiff and the diverse Defendants.  *Global Oil Tools, Inc.*, 2013 U.S. Dist. LEXIS 84697, at *20-21; *Davis*, 2011 U.S. Dist. LEXIS 143090, at *19-20; *Accardo*, 2007 U.S. Dist. LEXIS 6859, at *35-36.  As to the non-diverse Defendants, independent grounds of jurisdiction exist as detailed below.

**C.     Amount in Controversy**

35.     The amount in controversy arising from the Plaintiff's allegations exceeds $75,000, exclusive of interest and costs.  Pursuant to Louisiana law, Plaintiff did not demand a specific dollar amount; however, Plaintiff seeks, among other things, all damages and remedies appropriate under the CZM Laws, including, but not limited to:

- Restoration and remediation costs;

- Actual restoration of disturbed areas to their original condition;

- Costs necessary to clear, revegetate, detoxify and otherwise restore the affected portions of the Plaquemines Parish Coastal Zone as near as practicable to its original condition pursuant to LAC 43:I.705.N, 711.F and 719.M;

- Declaratory relief in circumstances where such relief is required, in addition to money damages, to accomplish the purposes of La. R.S. 49:214.21, *et seq.*;

- Costs and expenses of litigation, including costs of environmental assessments and expert costs, and reasonable attorney's fees; and

- All other damages or remedies provided for in La. R.S. 49:214.21, *et seq.*

Petition, ¶ 34.   Given the broad scope and nature of the relief requested, the Removing Defendants aver that it is facially apparent that the amount in controversy exceeds $75,000, exclusive of interest and costs.

## II.   Removal Is Proper Under 28 U.S.C. §§ 1333 and 1441(a) Because the Petition Asserts General Maritime Claims.

36.   "A federal court's authority to hear cases in admiralty flows initially from the Constitution, which 'extend[s]' federal judicial power 'to all Cases of admiralty and maritime Jurisdiction.'"  U.S. Const., Art. III, § 2; *see also Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531 (1995).  "Congress has embodied that power in a statute giving federal district courts 'original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction . . . .'"  28 U.S.C. § 1333(1); *see also Grubart*, 513 U.S. at 531.

37.   A party seeking to invoke federal admiralty jurisdiction under 28 U.S.C. § 1333(1) "must satisfy conditions both of location and of connection with maritime activity." *Grubart*, 513 U.S. at 534.  In applying the location test, a court must determine whether the conduct complained of occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water.  *Id.* at 534 (*citing* 46 U.S.C. App. § 740 (now 46 U.S.C. § 30101)).  In applying the connection test, a court must first assess the "general features of the type of incident involved" to determine if the incident has "a potentially disruptive impact on maritime commerce," and then determine whether the character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. *Grubart*, 513 U.S. at 534.

38.   Both tests are easily satisfied here.  Many of the injuries alleged by Plaintiff have allegedly occurred and continue to occur on navigable waters.  Specifically, the Petition alleges that "Defendants' oil and gas exploration, production and transportation operations associated

with the development of the Lake Hermitage Oil & Gas Field in Plaquemines Parish were conducted in violation of CZM Laws and that these activities caused substantial damage to land and waterbodies located in the '**Coastal Zone**' . . . ." Petition, ¶ 3.  According to the Petition, the Coastal Zone contains "'the coastal waters and adjacent shorelands within the boundaries of the coastal zone . . . .'  The term 'coastal waters' includes 'bays, lakes, inlets, estuaries, rivers, bayous and other bodies of water within the boundaries of the coastal zone which have measurable seawater content….'" Petition, ¶ 5.  The Petition further alleges that the CZM laws regulate certain uses which "directly and significantly affect coastal waters" and which include "dredge or fill activity which intersects with more than one water body," "projects involving use of state owned land or water bottoms," "all mineral activities, including exploration for, and production of oil, gas, and other minerals, all dredge and fill uses associated therewith, and all other associated uses,"  "dredge or fill projects not intersecting more than one water body," and "maintenance dredging."  Petition, ¶¶ 7, 8.

39.     Plaintiff complains that Defendants' oil and gas activities have resulted in "the dredging of numerous canals in, through, and across the Operational Area" which has a "direct and significant impact on the state coastal waters" within the Parish and which has caused damage including bank slumping, erosion and salt water intrusion.  Petition, ¶ 25.

40.     In addition, Plaintiff claims that through dredging activity, Defendants have failed to avoid adverse impacts including alterations in the concentration of oxygen in coastal waters, destruction or adverse alteration of streams, wetland, tidal, passes, inshore waters and waterbottoms, beaches, dunes, barrier islands as well as other damage.  Petition, ¶ 26.

41.     Plaintiff claims damages under permits issued for dredging by vessels on navigable water.  Thus, Plaintiff's claims sound in maritime law, *Grubart*, 513 U.S. at 534,

giving rise to Admiralty and Maritime Jurisdiction arising under Article III, section 2 of the United States Constitution, 28 U.S.C. § 1333, 46 U.S.C. § 30101, and Rule 9(h) of the Federal Rules of Civil Procedure.

42.    Before January 2012, courts interpreted 28 U.S.C. § 1441(a) to provide that a general maritime claim could be removed only when there was a separate basis for federal jurisdiction.  However, 28 U.S.C. § 1441 was amended in 2011 as a part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, H.R. 394, P.L. 112-63.  The amendment removes the language in section 1441(a) that had been interpreted as barring removal of federal maritime cases absent a separate basis for jurisdiction.  *See Ryan v. Hercules Offshore, Inc.*, No. H-12-3510, 2013 WL 1967315 (S.D. Tex. May 13, 2013); *Wells v. Abe's Boat Rentals Inc.*, No. H-13-1112, 2013 WL 3110322 (S.D. Tex. June 18, 2013);  *Bridges v. Phillips 66 Company, et al.*, No. 13-477, 2013 WL 6092803 (M.D. La. Nov. 18, 2013) (denying remand based on 2011 revision to 28 U.S.C. § 1441 eliminating requirement for separate jurisdictional basis).

43.    Section 1441(a) currently states:  "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."   Accordingly, the case is removable because it asserts general maritime claims.

### III.    Removal of this Action is Proper Under the Class Action Fairness Act.

44.    CAFA reflects Congress' intent to have federal courts adjudicate substantial suits brought by or on behalf of numerous plaintiffs against out-of-state defendants.  Toward that end, CAFA gives federal courts jurisdiction over not just "class actions," but also "mass actions"

which are defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact . . . ." 28 U.S.C. § 1332(d)(11)(B)(i).  Section 1332(d)(11)(A) provides that a mass action is removable as a class action if it otherwise meets the requirements of § 1332(d)(2) through (10), which includes, for example, the requirements that the matter in controversy exceed the sum of $5 million and that there be minimal diversity.  Here, all of those requirements are satisfied, and removal is proper.

45.     **Monetary Relief.**  The causes of action in the Petition request money damages, restoration and remediation costs, and declaratory relief.  *See*, *e.g.*, Petition, ¶¶ 10, 16, 17, 22, 23, 30.  In addition, the Petition seeks an award of attorney's fees.  *See*, *e.g.*, Petition, ¶¶ 32, 34.  For all of these reasons, the "monetary relief" requirement of 28 U.S.C. § 1332(d)(11)(B)(i) is satisfied.

46.     **Numerosity (100 or more persons)**.  CAFA also includes a numerosity requirement that the case involve claims of 100 or more persons.  28 U.S.C. § 1332(d)(11)(B)(i).  In *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008) ("*Allstate*"), the Fifth Circuit stated that it is "well-established that in determining whether there is jurisdiction, federal courts look to the substance of the action and not only at the labels that the parties may attach" to determine who are real parties in interest.  *Id.* at 424.  The Fifth Circuit stressed that it is particularly important to do so when a case is removed under CAFA because CAFA was specifically designed to prevent "jurisdictional gamesmanship" by clever plaintiffs.  *Id.*  The *Caldwell* court looked at the petition and determined that while there was only a single named plaintiff (the State of Louisiana) and while the state did have some interests at stake in the lawsuit, it could not be said that the State was the "only" real party in interest; instead more than

100 individual policyholders were also "real parties in interest." *Id.* at 430. Similarly, in *Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796 (5th Cir. 2012), *cert. granted*, 133 S.Ct. 2736 (2013), the Fifth Circuit found that "real parties in interest in this suit include both the State and individual consumers of LCD products" and because there were more than 100 consumers of LCD products, the CAFA mass action numerosity requirement was satisfied. *Id.* at 802.

47.     The same is true here. The Plaintiff may have some interests at stake in this action, but unquestionably, the landowners are also real parties in interest insofar as they own properties that are alleged to be damaged. Indeed, the map of the Coastal Zone identified in Exhibit A to the Petition includes numerous properties owned by individual landowners. *See* Petition, Ex. A. The Petition alleges that Defendants' activities have affected the entire Plaquemines Parish Coastal Zone, which includes the properties belonging to the landowners. *See*, *e.g.*, Petition, ¶¶ 3, 18, 22, 23, 24, 25, 31.

48.     Additionally, the landowners unquestionably will benefit from the relief requested in the Petition, which is directed at repairing, restoring, and remediating all the properties located in the Coastal Zone. Petition, ¶ 34 and Prayer for Relief. Accordingly, the landowners in the Coastal Zone are real parties in interest for the purposes of the CAFA numerosity requirement.

49.     On information and belief, the landowners include at least 100 property owners whose properties fall within the area allegedly damaged as a result of the alleged activities of the Defendants.

50.     **Commonality**. CAFA includes a requirement that the plaintiff propose to try the claims of the 100 or more people "jointly on the ground that the potential claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). Here, the Plaintiff proposes

-19-

that this single lawsuit require Defendants to pay moneys and remediate the Coastal Zone to restore property belonging to all the landowners in the Coastal Zone who are real parties in interest.  Thus, this requirement is met.

51.    **Amount in Controversy ($5 million).**  CAFA requires that the aggregate matter in controversy exceeds $5 million.  28 U.S.C. §§ 1332(d)(2), 1332(d)(11)(A).  Here, there is no question that the Plaintiff and the landowners seek to have Defendants pay over $5 million.  The restoration and remediation costs, actual restoration of disturbed areas, payment of costs to clear, revegetate, detoxify and otherwise restore the affected portions of the Coastal Zone will exceed $5,000,000.  *See* Petition, ¶ 34 and Prayer for Relief.  In addition, the Petition seeks attorney's fees, which alone could be over $5 million.  *See Grant v. Chevron Phillips Chemical Co.*, 309 F.3d 864, 873 (5th Cir. 2002).  Accordingly, the purported damages and attorney's fees in this matter satisfy the amount in controversy requirement.  For all of these reasons, the $5 million amount in controversy requirement is met.

52.    **Amount in Controversy ($75,000).**  A federal court's jurisdiction in a CAFA mass action "shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)."  28 U.S.C. § 1332(d)(11)(B)(i).  The jurisdictional amount requirement in § 1332(a) is that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  The landowners who are real parties in interest share a "common and undivided interest" in the relief sought in this lawsuit, and therefore the aggregate amount in controversy in this case (which, as noted above, is clearly over $5 million) is the amount in controversy for each and every real party in interest, thus satisfying this requirement *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1330 (5th Cir. 1995); *see also Zahn v. Int'l Paper Co.*, 414 U.S. 291, 294 (1973); *Troy Bank of Troy, Indiana v. G. A.*

-20-

*Whitehead & Co.*, 222 U.S. 39, 40-41 (1911).  Alternatively, the damage claimed on behalf of most, if not all, of the individual landowners separately meets the amount in controversy requirement inasmuch as the combined value of the property and the cost of restoring or remediating the individual property at issue combined is in excess of $75,000.  In addition, the value of the other relief sought on behalf of each of the landowners is in excess of $75,000.  *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."); *see also Hartford Ins. Group v. Lou–Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002) ("The amount is controversy is 'the value of the right to be protected or the extent of the injury to be prevented.'") (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir.1983)).  For all of these reasons, the $75,000 amount in controversy requirement is met.

53.  **Minimal Diversity.**  CAFA further contains a minimal diversity requirement that is met if any plaintiff is a citizen of a state different from any defendant.  28 U.S.C. §§ 1332(d)(2), 1332(d)(11)(A).  At least some of the landowners are citizens of Louisiana, and additionally, the Plaintiff is a "political subdivision of a State" and therefore is "a citizen of the State for diversity purposes." *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973).  Exxon Mobil Corporation is incorporated in the State of New Jersey, with its principal place of business in Texas, and, therefore, Exxon Mobil Corporation is a citizen of New Jersey and Texas for purposes of federal diversity jurisdiction.  ConocoPhillips Company is incorporated in the State of Delaware, with its principal place of business in Texas, and therefore, ConocoPhillips Company is a citizen of Delaware and Texas for purposes of federal diversity jurisdiction.  Chevron U.S.A., Inc. is incorporated in the State of Pennsylvania, with its principal place of

business in California, and, therefore, Chevron U.S.A., Inc. is a citizen of Pennsylvania and California for purposes of federal diversity jurisdiction.    Chevron U.S.A. Holdings, Inc. is incorporated in the State of Delaware, with its principal place of business in California, and therefore Chevron U.S.A. Holdings, Inc. is a citizen of Delaware and California for purposes of federal diversity jurisdiction.  Chevron Pipe Line Company is incorporated in the State of Delaware, with its principal place of business in California, and therefore, Chevron Pipe Line Company is a citizen of Delaware and California for purposes of federal diversity jurisdiction. Moreover, upon information and belief, of the eleven Defendants in this lawsuit, one other named Defendant in this lawsuit is not a Louisiana citizen.  *See also* ¶¶ 12-17, *supra*.  Thus, the minimal diversity requirement is satisfied.

## IV.    The Court Has Subject Matter Jurisdiction Over This Case Under 28 U.S.C. § 1331 Pursuant to the Natural Gas Act ("NGA"), 15 U.S.C. §§ 717-717w.

54.    The Natural Gas Act, 15 U.S.C. §§ 717-717w ("NGA"), as administered by the Federal Energy Regulatory Commission (FERC), provides the framework for a "comprehensive scheme of federal regulation" applicable to natural gas companies engaged in the transportation of natural gas in interstate commerce.  *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988) (quoting *N. Natural Gas Co. v. State Corp. Comm'n of Kan.*, 372 U.S. 84, 91 (1963)). This framework includes a detailed certification process administered by FERC (with input from other federal agencies) that applies to any natural gas company that intends to "construct[], extend[], acquire[], or operate[] any facility for the transportation or sale of natural gas in interstate commerce."    *Id.* at 302 (citing 15 U.S.C. § 717f(c)(1)(A)); see also 15 U.S.C. § 717n(b)(1).  Through the certificates it issues, FERC retains jurisdiction over the certificated operations of natural gas companies.  *See generally* 18 C.F.R. Part 157.

55.     A "natural gas company" is defined under the NGA as "a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." 15 U.S.C. § 717a(6).

56.     In the Petition, Plaintiff has named Chevron Pipe Line Company as a Defendant, supposedly "as successor in interest to **Gulf Refining Company**."   Petition, ¶ 2 (emphasis in original).   Chevron Pipe Line Company is ***not*** a successor in interest to Gulf Refining Company with respect to any of the exploration and production interests that entity possessed.   Rather, Chevron Pipe Line Company is a successor in interest only with respect to Gulf Refining Company's interests related to the transportation of oil and gas.   Thus, as pled in the Petition, it would appear that Plaintiff seeks to have liability imposed against Chevron Pipe Line Company based on "transportation operations," Petition, ¶ 3, that involved movement of natural gas in interstate commerce.   Quite simply, the Petition appears to seek an award of damages from a natural gas company, as defined under the NGA, based on operations that are the subjects of a detailed federal regime.

57.     Accordingly, this Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the NGA.[7]   Federal courts have authority to "hear claims recognized under state law" when (1) resolving a federal issue is necessary to resolve a state-law claim, (2) the federal issue is actually disputed, (3) the federal issue is substantial, and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.   *Grable &*

---

[7]      Specifically, the NGA provides:  "The District Courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder."  15 U.S.C. § 717u.

-23-

*Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *Hughes v. Chevron Phillips Chem. Co.*, 478 Fed. App'x 167, 170 (5th Cir. 2012).  All four criteria are met here.

58.    Plaintiff's allegations require adjudication of substantial and disputed issues of federal law.  Plaintiff seeks damages from a natural gas company that has been engaged in operations under, and in compliance with, the NGA and other federal laws.  Plaintiff's claims and requested relief propose to interfere with the jurisdiction conferred on FERC by federal statutes and regulations to administer operations of entities engaged in the transportation of natural gas in interstate commerce.

59.    The Petition thus directly implicates the workings of interstate commerce, in which the interest of the federal government is substantial, as aptly demonstrated by the detailed regime set out in the NGA and the federal regulations implementing it.  The potential impact of Plaintiff's action on interstate commerce extends far beyond the confines of this particular case, and thus necessitates uniformity of decisions in the federal courts rather than piecemeal adjudication by state courts.  This case properly belongs in federal court, and this Court's exercise of jurisdiction will not disturb the balance of federal and state judicial responsibilities.

60.    The Removing Defendants reserve the right to amend or supplement this Notice of Removal.

**WHEREFORE,** the Removing Defendants pray that this Court recognize jurisdiction over this action and that the suit be removed to this Court for further proceedings in accordance with law.

Respectfully submitted,

/s/ Robert B. McNeal

**ROBERT B. MCNEAL (Bar No. 14211)**
rbmcneal@liskow.com
Liskow & Lewis
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, LA  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

**MICHAEL P. CASH (Bar No. 31655)**
mcash@liskow.com
Liskow & Lewis
First City Tower
1001 Fannin Street
Houston, TX 77002-6756
Telephone:  (713) 651-2900
Facsimile:  (713) 651-2908

**JAMIE D. RHYMES (Bar No. 24621)**
jdrhymes@liskow.com
Liskow & Lewis
822 Harding Street
Lafayette, LA 70503
Telephone:  (337) 232-7424
Facsimile:  (337) 267-2399

Martin A. Stern (#17154)
martin.stern@arlaw.com
Glen M. Pilié (#1539)
glen.pilie@arlaw.com
Jeffrey E. Richardson (#23273)
jeffrey.richardson@arlaw.com
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone:  (504) 581-3234
Facsimile:  (504) 566-0210

*Attorneys for Exxon Mobil Corporation*

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

/s/ Leigh Ann Schell
Deborah D. Kuchler, T.A. (#17013)
Janika D. Polk (#27608)
Leigh Ann Schell (#19811)
Michele Hale DeShazo (#29893)
1615 Poydras Street
Suite 1300
New Orleans, LA  70112
T. 504-592-0691
F. 504-592-0697
Email: dkuchler@kuchlerpolk.com
       jpolk@kuchlerpolk.com
       lschell@kuchlerpolk.com
       mdeshazo@kuchlerpolk.com

**_Attorneys for ConocoPhillips Company_**


**KEAN MILLER LLP**

/s/ L. Victor Gregoire
L. Victor Gregoire (#22400)
victor.gregoire@keanmiller.com
Pamela R. Mascari  (#25162)
pam.mascari@keanmiller.com
Claire E. Juneau (#33209)
claire.juneau@keanmiller.com
II City Plaza
400 Convention St., Suite 700
Post Office Box 3513 (70821)
Baton Rouge, Louisiana 70802
Telephone: (225) 387-0999
Facsimile: (225) 388-9133

-and-

**KEAN MILLER LLP**

Michael R. Phillips (#21020)
mike.phillips@keanmiller.com
Michelle P. Cumberland (#30681)
michelle.cumberland@keanmiller.com
909 Poydras, Suite 3600
New Orleans, LA 70112
Telephone:  (504) 585-3050
Facsimile:  (504) 585-3951

*Attorneys for Defendants Chevron U.S.A. Inc.,*
*Chevron U.S.A. Holdings, Inc., and Chevron Pipe*
*Line Company*

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2013, a copy of the foregoing Notice of Removal

was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing

will be sent to all counsel of record by electronic mail and/or regular mail.


/s/ Robert B. McNeal

1326350_1

-27-